**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ANNEPHIA PROCTOR,<br><br>Plaintiff,<br><br>v.<br><br>U.S. AGENCY FOR GLOBAL MEDIA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 24-01635 (RC)<br>Civil Action No. 24-02655 (RC)<br>(Consolidated) |

**MEMORANDUM OPINION**

## I. INTRODUCTION

Plaintiff Annephia Proctor, appearing *pro se*, sues her former employer, U.S. Agency for Global Media ("Agency"). The gravamen of the complaint is disability discrimination and retaliation in federal employment.[1] Pending before the Court is Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment. Defendant asserts first that most of Plaintiff's claims are untimely or unexhausted and, second, that Plaintiff has failed to state a claim of retaliation. For the following reasons, the Court dismisses the complaint as time-barred.

## II. BACKGROUND

### A. Factual Allegations

The following allegations drawn from the Amended Complaint, ECF No. 40, are taken as

[1] Despite the Court's guidance to Plaintiff on pleading with clarity, *see* Order, ECF No. 39, her amended complaint is wide-ranging and contains neither separate counts setting out the causes of action nor a clear and concise statement of the claims. Because Title VII provides the exclusive judicial remedy for federal employees claiming discrimination, *Coulibaly v. Pompeo*, 318 F. Supp. 3d 176, 185 (D.D.C. 2018) (Contreras, J.) (collecting cases), the Court, as has Defendant, construes this action as brought under § 717 of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000e-16, and the Rehabilitation Act, 29 U.S.C. § 794a(a)(1), which makes available to federal employees asserting disability discrimination the remedies, procedures, and rights set forth in § 2000e-16.

true. Plaintiff was employed as an Administrative Officer of the Agency from September 2014 to February 22, 2020. She has multiple "disability diagnoses." Am. Compl. ¶ 6; *see id*. (listing conditions). Before joining the Agency, Plaintiff "received reasonable accommodation equipment in 2013" from the Department of Health and Human Services that "was transferred" with her to the Agency. *Id*. ¶ 9; *see Maxine R.* v. *Chao*, 2022 WL 1226967, at *1 (EEOC Dec. Apr. 14, 2022) (Plaintiff "was provided in her workplace a 'sit-and-stand' desk, ergonomic chair, and headphones."). On December 6, 2018, Plaintiff "learned" that Defendant "had discarded all of her reasonable accommodation equipment from her former agency," that "her telework status would not be reinstated," and that "she was no longer allowed to work the maxi-flex schedule like all the other administrative officers." Am. Compl. ¶¶ 41, 42, 43. Beginning that day, Plaintiff "requested replacement of her reasonable accommodation equipment." *Id*. ¶ 44.

Meanwhile, "[b]etween 2015 and 2016," Plaintiff "filed several complaints with the Office of Inspector General (OIG) against the Agency due to poor financial management, unliquidated contracts, and falsification of time and attendance records." Compl. ¶ 12. In 2016, she "was pushed by her second-line supervisor, Scott Steam," *id*. ¶ 13, and on two separate occasions, she was sexually harassed and insulted by "an African male." *See id*. ¶¶ 14, 15. When Plaintiff "reported the issue[s] to Jenessa Coleman, she was then interviewed for the OIG complaint and escorted out of the building." *Id*. "No one asked" her "about the details" of the alleged encounters. *Id*.

Twice in March 2016, Plaintiff met with Coleman. In the first meeting on March 3, Plaintiff "shared . . . that she was the one who made the [OIG] complaint." *Id*. ¶ 16. In the second meeting on March 23, Plaintiff was placed on paid administrative leave without

explanation. *Id.* ¶ 17. She was on paid leave status until July 22, 2018, when she was terminated apparently for "several unfounded charges related to real estate and operating a business." *Id.* ¶¶ 18-19. Plaintiff "promptly submitted a complaint to the Merit Systems Protection Board (MSPB). During a conference call on October 25, 2018, Plaintiff requested discovery from the agency. *Id.* ¶¶ 23-24. But on November 6, 2018, she was "reinstated with full benefits and back pay," and "her personnel record" was "cleared of all documents related to her termination." *Id.* ¶ 23. Plaintiff was instructed to report to work on November 13, 2018.

Plaintiff's tenure after reinstatement was contentious. "On or around November 12, 2018," Plaintiff requested sick leave for November 13-16, 2018. *Id.* ¶ 27. She provided "medical documentation . . . for her absences on November 13 and 14[.]" *Id.* ¶ 28. On November 14, Plaintiff's sick leave request for November 13 was denied after questions were raised in an email thread involving, among others, Agency Attorney Jessie James, Labor and Employee Relations Specialist Yoko Hoffman, and Karen Larson. *See id.* ¶ 29. In an email to Plaintiff, Larson "stated that she had no reason to believe" that Plaintiff was absent on November 13 "for any purposes outlined in 5 CFR 63.401(a)" and denied her sick leave request for that day "unless" Plaintiff "provided a medical certificate or other acceptable administrative evidence by November 21, 2018." *Id.* ¶ 30. In addition, Larson denied Plaintiff's requests for annual leave on November 14-16, stating that Plaintiff did not "have any accrued annual leave" and that her absence on November 14 "will be recorded as AWOL." *Id.* ¶¶ 30-31 (internal quotation marks omitted). Thereafter, Plaintiff "repeatedly clashed" with her supervisors and others "over issues with leave" and ultimately was "charged with AWOL." Def.'s Mot. at 9-10 (citing Am. Compl.); *see* EEOC Dec. at *1 ("On December 6, 2018, Complainant returned to duty and

learned that the Agency had placed her on an Absent Without Leave (AWOL) status during her absences between November 13, 2018 and December 6, 2018."). On November 28, 2018, Plaintiff emailed Hoffman and Tisha Elliott also of Labor Relations, Am. Compl. ¶ 39, "to request the agency's points of contact for EEO and Reasonable Accommodations." *Id*. ¶ 35.

On December 19, 2019, following a series of leave restrictions and lifting of same, Plaintiff's supervisor "issued a proposal for the removal of Ms. Proctor," for (1) being absent without leave on September 11, 2019; October 4, 2019; and October 23, 2019; (2) failing to follow leave requesting procedures on September 11, 2019; October 4, 2019; and October 23, 2019; and (3) inappropriate behavior for raising her voice, calling her supervisor and telling the supervisor not to "reply . . . with that B.S" and for being dismissive and accusatory. Def.'s Mot. at 10 (citing Am. Compl. ¶¶ 96-98); *see* EEOC Dec. at *1 (discussing leave restrictions beginning February 25, 2019). Plaintiff "was terminated a second time" on February 22, 2020, by "deciding official" Eric Phillip. Am. Compl. ¶ 102.

### B. Administrative and Procedural History

As recounted in the EEOC decision, Plaintiff initiated informal EEO counseling on December 9, 2018, which was unsuccessful. On March 4, 2019, Plaintiff filed a formal EEO complaint alleging that "the Agency discriminated against her on the bases of race (African American), national origin (American), religion (Christian), disability, and in reprisal for prior protected EEO activity." *Maxine R*., 2022 WL 1226967 at *2. The challenged actions began on November 13, 2018, with Plaintiff's placement on AWOL status, and ended on December 19, 2019, with the proposed removal notice. *See* Def.'s Statement of Material Facts ¶ 1, ECF No.

43-2 (setting out EEO claims). On September 14, 2020, the Agency issued a final decision, which Plaintiff appealed on October 13, 2020. Pl.'s Opp'n, ECF No. 46 at 2.

On April 14, 2022, the EEOC, "[b]ased on a thorough review of the record and the contentions on appeal," affirmed the Agency's no discrimination finding and informed Plaintiff of her right either to request reconsideration within thirty calendar days of receipt of the decision or to file a civil action in an appropriate United States District Court within ninety calendar days from the date of the decision. *Maxine R.*, 2022 WL 1226967 at *6-7. Plaintiff "timely requested" reconsideration, which the EEOC denied on November 7, 2022. Def.'s Ex. A, ECF No. 43-1 at 1 (Decision on Request for Reconsideration). The EEOC's decision informed Plaintiff about the finality of the reconsideration denial and her right to file a civil action "**within ninety (90) calendar days** from the date that you receive this decision." *Id.* at 2 (bolded in original). Plaintiff received the decision on November 7, 2022. Am. Compl. ¶ 3. She filed this action (*Proctor I*) on May 9, 2024.

In addition to the EEOC proceedings, Plaintiff, in February 2020, appealed to the Merit Systems Protection Board (MSPB) to review her removal from federal employment. *See Proctor v. U.S. Agency for Global Media*, No. 24-cv-2655-RC (*Proctor II*), ECF No. 11 at 31-58 (Initial Dec., Dec. 17, 2020). She claimed retaliation based on her "protected activity" and "accommodation requests." *Id.* On April 11, 2024, the MSPB affirmed the agency's decision sustaining Plaintiff's removal, *Proctor I*, ECF No. 53-1 at 93-102, and Plaintiff appealed to the United States Court of Appeals for the Federal Circuit on June 5, 2024. *Proctor II*, ECF No. 1 (Notice of Docketing). There, Plaintiff confirmed her desire to pursue the discrimination claims. So on September 16, 2024, the Federal Circuit, citing cases disallowing "bifurcated

review of the personnel action and discrimination claims," transferred Plaintiff's case to this Court pursuant to 28 U.S.C. § 1631. *Proctor II*, ECF No. 17 (Order). On March 3, 2025, this Court observed that the transferred action came "without a noticeable complaint" and granted Plaintiff's motion to consolidate *Proctor II* with this action. *Id.*, ECF No. 34. In light of the consolidation, *Proctor II* was closed on April 25, 2025, and the parties were ordered to file subsequent filings only in the lead case, *Proctor I*.

Subsequently, in response to Plaintiff's attempts to amend the complaint piecemeal, the Court ordered her to file a comprehensive amended complaint, ECF No. 39, which was done, ECF No. 40. On December 10, 2025, Defendant moved to dismiss Plaintiff's amended complaint under Federal Rule of Civil Procedure 12(b)(6) or for summary judgment under Rule 56. Plaintiff has opposed the motion, ECF Nos. 45, 46, 51, 53, and Defendant has replied, ECF No. 47. Defendant's motion is now ripe for consideration.

## III. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "In evaluating a Rule 12(b)(6) motion, the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.' " *Langeman v. Garland*, 88 F.4th 289, 294 (D.C. Cir. 2023) (quoting *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012)). But courts

need not accept as true conclusory allegations or legal conclusions. *Iqbal*, 556 U.S. at 678, 681. Instead, courts must draw upon their "judicial experience and common sense" to determine whether the "well-pleaded facts" support a plausible claim. *Id.* at 679.

While matters "outside the pleadings" generally may not be considered without converting the motion to one for summary judgment, Fed. R. Civ. P. 12(d), a court deciding a motion brought under Rule 12(b)(6) may, without triggering the conversion rule, consider, as here, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also English v. District of Columbia*, 717 F.3d 968, 971 (D.C. Cir. 2013). "In employment discrimination cases, courts may, and often do, take judicial notice of EEOC charges and EEOC decisions." *Pappas v. District of Columbia*, 513 F. Supp. 3d 64, 77 (D.D.C. 2021) (Contreras, J.).

## IV. ANALYSIS

Defendant argues that certain claims are unexhausted, untimely or both, and that Plaintiff fails to state a claim of retaliation. *See* Def.'s Mot. at 15 (summarizing defenses). A federal employee bringing claims under either Title VII or the Rehabilitation Act must exhaust administrative remedies before filing suit. *See Doak v. Johnson*, 798 F.3d 1096, 1099 (D.C. Cir. 2015). The employee's failure to meet prescribed "statutory or regulatory deadlines" may be grounds for dismissal of the "federal court action . . . for failure to administratively exhaust the claim." *Niskey v. Kelly*, 859 F.3d 1, 7 (D.C. Cir. 2017). This case involves the convoluted "intersection of federal civil rights statutes and civil service law[.]" *Kloeckner v. Solis*, 568 U.S. 41, 49 (2012).

**A. Framework**

The Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. § 1101 *et seq*., "establishes a framework for evaluating personnel actions taken against federal employees" through a series of graduated administrative procedures, "depending on an action's severity." *Kloeckner*, 568 U.S. at 44; *see Filebark v. U.S. Dep't of Transp*., 555 F.3d 1009, 1010 (D.C. Cir. 2009) ("Congress, through the [CSRA] . . . (codified as amended in scattered sections of 5 U.S.C.), and related employment statutes, has carefully constructed a system for review and resolution of federal employment disputes, . . . providing . . . particular forums and procedures for particular kinds of claims.") (parenthesis in original)). When the action is a termination, the employee "has a right to appeal the agency's decision to the MSPB, an independent adjudicator of federal employment disputes." *Kloeckner*, 568 U.S. at 44. The appeal "may merely allege that the agency had insufficient cause for taking the action under the CSRA" but "may also or instead charge the agency with discrimination prohibited by another federal statute, such as Title VII[.]" *Id*. "When an employee complains of a personnel action serious enough to appeal to the MSPB and alleges that the action was based on discrimination, she is said (by pertinent regulation) to have brought a 'mixed case.'" *Id*. (citing 29 C.F.R. § 1614.302 (2012) (parenthesis in original)).

A mixed case "may proceed in a variety of ways." *Id*. at 45. The employee "may first file a discrimination complaint with the agency itself, much as an employee challenging a personnel practice not appealable to the MSPB could do," *id*. (citing 5 CFR § 1201.154(a); 29 CFR § 1614.302(b)). "If the agency decides against her, the employee may then either take the matter to the MSPB or bypass further administrative review by suing the agency in district court." *Id*. (citing 5 CFR § 1201.154(b); 29 CFR § 1614.302(d)(1)(i)). Alternatively, the

employee may "initiate the process by bringing her case directly to the MSPB, forgoing the agency's own system for evaluating discrimination charges." *Id.* (citing 5 CFR § 1201.154(a); 29 CFR § 1614.302(b)). If "the MSPB upholds the personnel action (whether in the first instance or after the agency has done so), the employee again has a choice: She may request additional administrative process, this time with the EEOC, or else she may seek judicial review," *id.* (citing 5 U.S.C. §§ 7702(a)(3), (b); 5 CFR § 1201.161; 29 CFR § 1614.303).

"A plaintiff may file a mixed-case complaint with [her] agency's EEO office or with MSPB, but not both." *Jones v. U.S. Dep't of Just.*, 111 F. Supp. 3d 25, 31 (D.D.C. 2015), *aff'd, Jones v. United States Dep't of Just.*, No. 15-5246, 2017 WL 3895064 (D.C. Cir. July 14, 2017) (citing 29 C.F.R. § 1614.302(b)). "Whichever is filed first shall be considered an election to proceed in that forum," *id.* and a plaintiff must then exhaust [her] remedies in that forum." *Id.* "A Title VII lawsuit following the EEOC charge is limited in scope to claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.' " *Park v. Howard University*, 71 F.3d 904, 907 (D.C. Cir. 1995) (citation omitted). Unlike an appeal from the MSPB's decision, a Title VII litigant dissatisfied with the administrative process "has the right to de novo review in a federal district court." *Seneca v. Price*, 257 F. Supp. 3d 95, 98 (D.D.C. 2017) (collecting cases)).

**B. Discussion**

"Once a defendant has pleaded a failure either to exhaust administrative remedies or to comply with statutory time limits, the burden shifts to the plaintiff to make the case that dismissal is not warranted." *Dahlman v. American Ass'n of Retired Persons (AARP)*, 791 F. Supp. 2d 68, 76 (D.D.C. 2011) (citations omitted). Plaintiff first filed a complaint with

Defendant's EEO office and thus chose the EEO route as to all but the retaliatory discharge claim. The laws governing discrimination in federal employment require lawsuits to be filed "[w]ithin 90 days of receipt of notice of final action taken . . . by the [EEOC] upon an appeal" from the agency decision. 42 U.S.C. § 2000e-16(c). "Courts apply this limit strictly and 'will dismiss a suit for missing the deadline by even one day.' " *Woodruff v. Peters*, 482 F.3d 521, 525 (D.C. Cir. 2007) (quoting *Wiley v. Johnson*, 436 F. Supp. 2d 91, 96 (D.D.C. 2006)).

That said, the 90-day filing limit "is nonjurisdictional" and thus "subject to waiver, estoppel, and equitable tolling in 'extraordinary and carefully circumscribed instances.' " *Wiley*, 436 F. Supp. 2d at 96 (quoting *Mondy v. Sec. of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988) (cleaned up)). "Federal courts have typically extended equitable relief only sparingly." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). Equitable tolling is appropriate "in situations where [a plaintiff] has actively [but imperfectly] pursued judicial remedies . . . during the statutory period"; it does not "extend to . . . garden variety claim[s] of excusable neglect." *Id*. Equitable estoppel may apply if the plaintiff shows "that [the] untimely filing was a result of conduct by the defendant [and] be able to point to some type of 'affirmative misconduct' or misleading information regarding the filing deadline by the defendant." *Cristwell v. Veneman*, 224 F. Supp. 2d 54, 60 (D.D.C. 2002) (quoting *Irwin*, 498 U.S. at 96).

Plaintiff received the EEOC's final decision denying reconsideration on November 7, 2022. Am. Compl. ¶ 3. She alleges that "No Right to Sue letter issued." *Id*. But a prominent section of the decision captioned COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION states: (1) "[t]his decision of the Commission is final," (2) "there is no further right of administrative appeal from the Commission's decision," and (3) "[y]ou have the right to file a

civil action in an appropriate United States District Court **within 90 calendar days** from the date that you receive this decision," which would have been by February 6, 2023. ECF No. 43-1 (emphases in original). And "neither the text of Title VII" nor "the regulation governing final agency action," 29 C.F.R. § 1601.28, requires the right-to-sue notice "be given in any specific form." *Jackson-Pringle v. Washington Metropolitan Area Transit Authority*, 2022 WL 2982107, at *5 (D.D.C., 2022), *aff'd*, 2023 WL 2605271 (D.C. Cir. Mar. 17, 2023) (per curiam). Simply put, a "potential plaintiff's clock begins when the individual receives appropriate notice, . . . regardless of the medium in which that notice is conveyed." *Id*. at *5-6 (collecting cases).

Plaintiff's filing of this Title VII action on May 9, 2024, ECF Nos. 1, 2, is late by fifteen months. She has not met her burden to plead and prove "any equitable excuse for failure to meet the ninety-day filing limit[.]" *Wiley*, 436 F. Supp. 2d at 96 (citing *Saltz v. Lehman*, 672 F.2d 207, 209 (D.C. Cir. 1982)). Plaintiff mentions "systemic delays" brought on by the COVID-19 pandemic, *see* Pl.'s Opp'n at 2-3, but she has not identified an impediment to her filing a timely complaint or a complaint within a reasonable time after "the public health emergency ended in April 2023." Def.'s Reply, ECF No. 47 at 5 (citing National Emergencies Act, Pub. L. No. 118-3, 137 Stat. 6 (Apr. 10, 2023)). Notably, in May 2020 during the peak of the pandemic, this Court's "standing order contained a general observation that 'operations of the Clerk's Office are continuing but have been limited to support essential functions.' " *Robinson v. Department of Homeland Security Office of Inspector General*, 71 F.4th 51, 58-59 (D.C. Cir. 2023) (citing *In Re: Further Extension of Postponed Court Proceedings in Standing Order 20-9 and Limiting Court Operations in Exigent Circumstances by the COVID-19 Pandemic*, Standing Order No-20-29 (BAH) at 8 (D.D.C. May 26, 2020)), and "[t]he order specifically informed *pro*

*se* litigants" how to submit filings to the court via a designated email address "or 'by date-stamping and depositing papers in drop boxes located at the entrance to the Courthouse,' " *id*. (quoting *Standing Order* at 9). Plaintiff does not assert "that COVID-19 kept [her] from delivering [her] filing in person to the courthouse drop box, that the court personnel's guidance impaired [her] timely filing, that COVID-19 prevented [her] use of overnight delivery of [her] filing or that COVID-19 otherwise impeded [her] from timely filing electronically." *Id*. at 59. Her excuse based solely on the pandemic warrants no equitable tolling.

To the extent Plaintiff's claim of retaliatory discharge survives, it is untimely as well. A "federal employee who claims that an agency action appealable to the MSPB violates an antidiscrimination statute . . . should seek judicial review in district court, not in the Federal Circuit." *Kloeckner*, 568 U.S. 41 at 56. Such actions "must be filed within 30 days" of the date the employee "received notice of the judicially reviewable action," which "sets the clock running for when a case that belongs in district court must be filed there." *Id.* (quoting 5 U.S.C. § 7703(b)(2)). The MSPB's final decision was issued and "received" by Plaintiff on April 11, 2024. Am. Compl. ¶ 4. Plaintiff filed suit in the Federal Circuit fifty-five days later, on June 5, 2024. The Federal Circuit's transfer of the case to this Court does not alter the initial filing date. *See* 28 U.S.C. § 1631 (a civil action transferred to cure want of jurisdiction "shall proceed as if it had been filed in . . . the court to which it is transferred on the date upon which it was actually filed in . . . the court from which it is transferred.").

## V. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff's complaint is time-barred and grants Defendant's motion to dismiss. A separate order accompanies this Memorandum Opinion.

________/s/____________
RUDOLPH CONTRERAS
United States District Judge

Date: September 7, 2026